**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ANGEL MCDANIEL and CONSTANCE SIMON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOME BOX OFFICE, INC.,<br><br>Defendant. | Case No. 1:22-cv-01942-VEC |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO COMPEL ARBITRATION,
## <u>DISMISS CLASS CLAIMS, AND STAY ALL PROCEEDINGS</u>

Kenneth L. Chernof, admitted *pro hac vice*
Elisabeth S. Theodore, admitted *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001-3743
Telephone:  (202) 942-5940
Facsimile:  (202) 942-5999
ken.chernof@arnoldporter.com
elisabeth.theodore@arnoldporter.com

David B. Schwartz
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 836-7383
Facsimile:  (212) 836-8689
david.schwartz@arnoldporter.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

    A.    HBO Max's Subscribers Are Subject to Specific Usage Terms.............................1

    B.    Plaintiffs Accepted an Agreement to Arbitrate In Creating Their Accounts..........2

    C.    Plaintiffs Filed This Complaint Despite Their Agreement to Individually Arbitrate Disputes ...............................................................................................6

ARGUMENT ..........................................................................................................6

I.    The Court Should Compel Arbitration of Plaintiffs' Claims...............................6

    A.    The Arbitration Agreement Is Governed by the Federal Arbitration Act...............7

    B.    The Arbitration Agreement Is Valid and Should be Enforced ..............................9

        1.    A Valid Agreement to Arbitrate Exists....................................................9

        2.    Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement..................................................................................................14

II.    The Court Should Compel Plaintiffs To Proceed on an Individual Basis .........................15

III.    The Court Should Stay All Proceedings Pending Arbitration ...........................17

CONCLUSION.....................................................................................................17

# **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*,
    No. 03-CV-1162 (WHP), 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003) ............................15

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)...............................................................................................................7

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)..............................................................................................................16

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
    No. 21-CV-10377 (AT) (KHP), 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022)........................11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)....................................................................................................*passim*

*Bergenstock v. LegalZoom.com, Inc.*,
    No. 13 CVS 15686, 2015 WL 3866703 (N.C. Super. June 23, 2015)....................................10

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    No. 17-CV-04570 (LAK)(KHP), 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
    *report and recommendation adopted as modified*,
    No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) .............................8, 12

*Camilo v. Lyft, Inc.*,
    384 F. Supp. 3d 435 (S.D.N.Y. 2019)....................................................................................8

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*,
    967 F. Supp. 2d 756 (S.D.N.Y. 2013).....................................................................................8

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003).................................................................................................................8

*Conrad v. Phone Directories Co.*,
    585 F.3d 1376 (10th Cir. 2009) ..............................................................................................7

*Daly v. Citigroup Inc.*,
    939 F.3d 415 (2d Cir. 2019)...................................................................................................14

*Davarci v. Uber Techs., Inc.*,
    No. 20-CV-9224 (VEC), 2021 WL 3721374 (S.D.N.Y. Aug. 20, 2021) ...............................17

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018).................................................................................................7, 15, 16

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020) .................................................................................12

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ...........................................................................................................14

*Flores v. Chime Fin., Inc.*,
   No. 21-CV-4735 (RA), 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ..........................9, 10, 11

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................................13

*Galvez v. JetSmarter, Inc.*,
   No. 18-CV-10311 (VSB), 2019 WL 4805431 (S.D.N.Y. Sept. 30, 2019) ............................12

*Guerriero v. Sony Elecs. Inc.*,
   No. 21-CV-1618 (VB), 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022) ...................................16

*Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*,
   613 F.2d 468 (2d Cir. 1980) .................................................................................................8

*Henricks v. Flywheel Sports, Inc.*,
   No. 19-CV-895 (PGG), 2020 WL 1285453 (S.D.N.Y. Mar. 18, 2020) ................................12

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
   468 F. Supp. 3d 646 (S.D.N.Y. 2020) ...............................................................................3, 11

*Holick v. Cellular Sales of N.Y., LLC*,
   802 F.3d 391 (2d Cir. 2015) ...............................................................................................9, 14

*Hood v. Uber Techs., Inc.*,
   No. 1:16-CV-998, 2017 WL 11017585 (M.D.N.C. May 17, 2017) .....................................10

*Horton v. Dow Jones & Co.*,
   No. 18-CV-4027 (LGS), 2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) ................................16

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) ................................................................................................17

*Lamkin v. Morinda Properties Weight Parcel, LLC*,
   440 F. App'x 604 (10th Cir. 2011) .......................................................................................7

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) .............................................................................................. *passim*

*Manigault v. Macy's E., LLC*,
   318 F. App'x 6 (2d Cir. 2009) ..............................................................................................9

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012)..................................................................................................7

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)............................................................... *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).....................................................................................................7

*Nicosia v. Amazon.com*, Inc.,
   834 F.3d 220 (2d Cir. 2016)..............................................................................3, 13

*Peiran Zheng v. Live Auctioneers LLC*,
   No. 20-CV-9744 (JGK), 2021 WL 2043562 (S.D.N.Y. May 21, 2021) .............3, 11

*Pincaro v. Glassdoor, Inc.*,
   No. 16-CV-6870 (ER), 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017)...............8, 12

*Porcelli v. JetSmarter, Inc.*,
   No. 19-CV-2537 (PAE), 2019 WL 2371896 (S.D.N.Y. June 5, 2019) ....................12

*Ragone v. Atl. Video at Manhattan Ctr.*,
   No. 07-CV-6084 (JGK), 2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008)................14

*Ramasamy v. Essar Glob. Ltd.*,
   825 F. Supp. 2d 466 (S.D.N.Y. 2011)......................................................................7

*Sacchi v. Verizon Online LLC*,
   No. 14-CV-423 (RA), 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) .......................16

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012)....................................................................................9

*Shetiwy v. Midland Credit Mgmt.*,
   959 F. Supp. 2d 469 (S.D.N.Y. 2013)....................................................................16

*Sollinger v. SmileDirectClub, LLC*,
   No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ...................12

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015)........................................................................14

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013)..................................................................................16

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
   592 F.3d 329 (2d Cir. 2010)..................................................................................14

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960)............................................................................................14

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020).............................................................10

*Ventoso v. Shihara*,
    No. 19-CV-3589 (PAE), 2019 WL 9045083 (S.D.N.Y. June 26, 2019) ...............................12

*Zambrana v. Pressler & Pressler, LLP*,
    No. 16-CV-2907 (VEC), 2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016)..............................9, 15

## **Statutes**

9 U.S.C. §§ 1, *et seq.*..........................................................................................1, 7, 17

## INTRODUCTION

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019); *accord, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see* 9 U.S.C. §§ 2–4.  It is this longstanding principle that is at issue here.  Plaintiffs are subscribers to HBO Max who allege violations of the Video Privacy Protection Act, which Defendant Home Box Office, Inc. ("HBO") vigorously disputes.  But the merits of these allegations must be resolved in arbitration, not in federal court.

Plaintiffs affirmatively agreed when they created their HBO Max accounts that these claims would be arbitrated and handled individually—not as a class action proceeding.  This agreement was express:  Plaintiffs voluntarily checked a box agreeing to HBO Max's Terms of Use, which include a prominent notice in the very first paragraph of the dispute resolution provisions that apply here.  These binding contractual obligations must be enforced under directly applicable Supreme Court precedent, as well as the Federal Arbitration Act, Second Circuit precedent, and New York law.  Accordingly, the Court should compel Plaintiffs to submit their individual claims against HBO to binding arbitration, dismiss their class claims with prejudice, and stay this proceeding pending resolution of the arbitration process.

## BACKGROUND

### A.     HBO Max's Subscribers Are Subject to Specific Usage Terms

HBO Max is a streaming platform that offers its subscribers access to premium original series, blockbuster films, documentaries, and other video programming.  Decl. of Taylor Davis ¶ 4 (April 29, 2022) ("Davis Decl.").  Consumers can subscribe to HBO Max in a variety of ways, including directly via the HBOMax.com website, or through distributors such as app

stores, wireless carriers, cable or satellite TV providers (also known as multi-channel video providers or "MVPDs"), and digital platforms such as Hulu and YouTube (often referred to as "virtual" MVPDs, or "vMVPDs"). *Id.*

As is common among technology, video, and services platforms, a subscription to HBO Max is subject to certain written terms and conditions—HBO Max's "Terms of Use" ("TOU")—which subscribers choose to accept in order to use the video platform. *Id.* Ex. A (Terms of Use). The TOU are presented to all HBO Max subscribers, and expressly govern their use of the HBO Max platform. *Id.* ¶¶ 7, 11, 15–19. The TOU convey information important for any subscriber to consider prior to accepting them, including terms relating to parental controls, cancellations, customer service, use restrictions, copyright infringement, and the like. *Id.* Ex. A. They also include a conspicuous, straightforward, and consumer-friendly dispute resolution agreement that mandates arbitration on an individual basis for a wide variety of claims. *Id.* Ex. A § 25. As detailed below, Plaintiffs expressly consented to the TOU when they signed up with HBO Max.

**B.     Plaintiffs Accepted an Agreement to Arbitrate In Creating Their Accounts**

Plaintiffs took affirmative steps to accept HBO Max's TOU when they created their HBO Max accounts. Plaintiffs allege that they subscribed to HBO Max through Amazon Prime Channels and AT&T Wireless. *See* Class Action Complaint ("CAC") ¶¶ 67, 74. After subscribing via these distributors, Plaintiffs were required to create individual accounts with HBO Max in order to gain access to the HBO Max platform. Davis Decl. ¶¶ 5–10, 12–16. At the time Plaintiffs created their accounts, HBO Max's account-creation screen presented subscribers with the option to check a button next to the words "I agree to the HBO Max **Terms of Use** and **Privacy Policy**." *Id.* ¶¶ 15–17. The phrase "**Terms of Use**" appeared in different-colored font and hyperlinked to the TOU. *Id.* ¶¶ 15–16. Without checking that box, Plaintiffs could not have completed the account creation process that is required to use the HBO Max

2

platform. *Id.* ¶ 17. The webpage that was presented to Plaintiffs appears below[1]:



*Id.* ¶ 15.

---

[1] "Courts deciding motions to compel [arbitration] apply a 'standard similar to that applicable for a motion for summary judgment.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Accordingly, on a motion to compel arbitration, the Court may consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Id.* (internal quotation marks omitted). Courts deciding arbitration motions thus routinely rely on declarations attaching terms of use and describing the means by which the arbitration agreement was accepted. *E.g.*, *Peiran Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, at *3–6 (S.D.N.Y. May 21, 2021) (enforcing arbitration agreement based on terms & conditions and web screenshots submitted with declaration); *Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 657–58 (S.D.N.Y. 2020) (same).

As indicated above, the phrase "**Terms of Use**" hyperlinks to the HBO Max TOU.  *Id.*

¶¶ 16.  Those Terms begin by trumpeting, in their first paragraph, an "IMPORTANT

MESSAGE" notifying the reader in capitalized, bold font that "**THESE TERMS REQUIRE**

**THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES,**

**RATHER THAN COURTS OR JURY TRIALS**."  *Id.* Ex. A.  The TOU go on to state, in bold

font, "**we each agree to resolve those disputes through binding arbitration or small claims**

**court instead of in courts of general jurisdiction**."  *Id.* Ex. A § 25.  They further state:

> WM[2] and you agree to arbitrate **all disputes and claims** between
> us, except for claims arising from bodily injury or that pertain to
> enforcing, protecting, or the validity of your or our intellectual
> property rights (or the intellectual property rights of any of our
> licensors, affiliates and partners).  This agreement to arbitrate is
> intended to be broadly interpreted.  It includes, but is not limited
> to:
>
> - claims arising out of or relating to any aspect of the
>   relationship between us, whether based in contract, tort,
>   fraud, misrepresentation or any other statutory or common-
>   law legal theory;
>
> - claims that arose before this or any prior Agreement
>   (including, but not limited to, claims relating to
>   advertising);
>
> - claims for mental or emotional distress or injury not arising
>   out of physical bodily injury;
>
> - claims that are currently the subject of purported class
>   action litigation in which you are not a member of a
>   certified class;
>
> - claims that may arise after the termination of this
>   Agreement.

---

[2] "WM" in the Arbitration Agreement refers to WarnerMedia Direct, LLC, which operates the HBO Max streaming platform, and its "subsidiaries, affiliates, . . . successors, and assigns."  Davis Decl. Ex. A ¶ 2 and § 25.  The TOU and Arbitration Agreement have been updated recently as a result of the recent combination of WarnerMedia and Discovery to change certain references from the prior parent company of WarnerMedia (AT&T) to its new parent company (Warner Bros. Discovery), but the substance of the Arbitration Agreement remains unchanged from the version that Plaintiffs saw when they created their HBO Max accounts.

*Id.* § 25(a).  The Arbitration Agreement within the TOU contains numerous additional details regarding its scope and terms, including that "arbitration will be governed by the Consumer Arbitration Rules ('AAA Rules') of the American Arbitration Association ('AAA'), as modified by this arbitration provision, and will be administered by the AAA."  *Id.* § 25(c).  The Arbitration Agreement further states that all issues relating to the arbitration "are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration are for the court to decide." *Id.*  And it further states that "[t]his Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision."  *Id.* § 25(a).

The Arbitration Agreement also repeatedly includes, in multiple places, an express waiver of any class action rights.  It states, in bold font, that "**[a]ny arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted**," and reiterates to subscribers that "**[y]ou agree that, by entering into this Agreement, you and we are each waiving the right to a trial by jury or to participate in a class action.**"  *Id.* §§ 25, 25(a).  Subsequently, in a section entitled "Requirement of Individual Arbitration," the Arbitration Agreement states:  "**YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.**" *Id.* § 25(f).

The Arbitration Agreement also contains protections to ensure that subscribers can cost-effectively pursue individual claims, including by relieving subscribers of the burden of paying

any arbitration-related fees in claims worth $75,000 or less, unless the claim was frivolous or brought for an improper purpose. *Id.* § 25(d).  And the agreement contains other consumer-friendly provisions as well, including, for example, incentivizing HBO Max to compensate consumers with meritorious claims without forcing them to go through the time and expense of proving those claims.  Subscribers are entitled to an alternative minimum payment of $10,000 if the arbitral award is greater than the last written settlement offer made before selection of the arbitrator. *Id.* § 25(e).  If there was no offer, subscribers are entitled to this alternative payment if the arbitrator awards any relief. *Id.*

### C.    Plaintiffs Filed This Complaint Despite Their Agreement to Individually Arbitrate Disputes

Despite having agreed to individualized arbitration for the claims at issue here, Plaintiffs filed a purported class action complaint in this federal district court on March 8, 2022, alleging that Defendant violated the Video Privacy Protection Act ("VPPA").  CAC ¶¶ 3–5, 94–103.  Plaintiffs purport to seek certification of a nationwide class of HBO Max subscribers. *Id.* ¶ 87.  While Defendant vigorously disputes the substance of Plaintiffs' VPPA claims, the indisputable fact is that they belong in arbitration.  Defendant accordingly notified counsel for Plaintiffs on March 31, 2022, that it intended to file the present motion.

### ARGUMENT

### I.    The Court Should Compel Arbitration of Plaintiffs' Claims

Plaintiffs entered into an agreement to arbitrate disputes relating to HBO Max in the most unambiguous manner possible:  they clicked a button next to the words "I agree."  The Federal Arbitration Act ("FAA") applies to that agreement, and the Act "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus*, 139 S. Ct. at 1412.  The

Court should enforce the agreement by compelling arbitration of Plaintiffs' claims on an individual basis.[3]

### A.       The Arbitration Agreement Is Governed by the Federal Arbitration Act

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This reflects a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 346 (citation omitted); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution" (citation omitted)).  The FAA requires courts to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The parties' arbitration agreement is clearly governed by the FAA.  As the dispute resolution provision acknowledges, "[t]his Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision." Davis Decl. Ex. A § 25(a).  The FAA's "transaction involving commerce" language is "broad and is indeed the functional equivalent of 'affecting'" commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995).  Congress intended the FAA

---

[3] If the arbitration motion is denied, Defendant intends to and reserves the right to move to dismiss the class action complaint. *See Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011) ("A motion to dismiss or stay in favor of arbitration is not a Rule 12 motion or a responsive pleading . . . ."); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1383 n.2 (10th Cir. 2009) ("If a party files a motion under FAA § § 3 or 4, that motion is denied by the court, and the denial is affirmed on interlocutory appeal, nothing prevents that party from then filing a Rule 12 motion to dismiss.").  As courts have recognized, the very point of an agreement to arbitrate is to reserve merits arguments for the arbitrator, so defendants are not required to answer or file a Rule 12 motion while a motion to compel arbitration is pending. *See Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 F. App'x 604, 607–08 (10th Cir. 2011).

to "signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  "Thus, '[f]ederal law applies to enforcement of a duty to arbitrate, whenever interstate commerce is involved.'"  *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 762 (S.D.N.Y. 2013) (quoting *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 472 (2d Cir. 1980)).  For the FAA to apply, a party need not "show[] any specific effect upon interstate commerce," as long as "in the aggregate the economic activity in question would represent a general practice . . . subject to federal control."  *Alafabco*, 539 U.S. at 56–57 (internal quotation marks omitted).

There is no question here that the HBO Max platform operates in interstate commerce; Plaintiffs acknowledge it in their complaint.  *See* CAC ¶ 96 (alleging that "Defendant is . . . the sixth largest streaming site on the planet and is thereby 'engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials'" (citation omitted)).  Moreover, when a contract involves transactions and communications over the Internet, courts have routinely applied the FAA.  *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA governed contract "pertain[ing] to internet transactions and rideshare services"); *Pincaro v. Glassdoor, Inc.*, No. 16-CV-6870 (ER), 2017 WL 4046317, at *4 (S.D.N.Y. Sept. 12, 2017) (FAA governed website terms of use); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK)(KHP), 2017 WL 7309893, at *2 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (same).  Courts also apply the FAA when, as here, parties to an agreement were citizens of different states. *Chartis Seguros Mexico*, 967 F. Supp. 2d at 762; *see* CAC ¶¶ 81–83.

For all of these reasons, the FAA applies to the parties' agreement.

B.     **The Arbitration Agreement Is Valid and Should be Enforced**

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements

according to their terms." *Lamps Plus*, 139 S. Ct. at 1412.  Courts accordingly must compel

arbitration so long as (1) a valid agreement to arbitrate exists and (2) the dispute falls within the

scope of that agreement.  *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir.

2015); *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820,

at *2 (S.D.N.Y. Dec. 2, 2016) (Caproni, J.).

These two requirements are plainly satisfied here.  When they created their accounts,

Plaintiffs unambiguously assented to the HBO Max Arbitration Agreement by clicking "I agree,"

and their claims fall directly within its scope.  The Court should compel arbitration.

1.     **A Valid Agreement to Arbitrate Exists**

Both Plaintiffs entered into a valid and enforceable arbitration agreement by voluntarily

clicking the "I agree" button when they created their HBO Max accounts.  The question of

whether the parties agreed to arbitration is one of "state contract law."  *Schnabel v. Trilegiant*

*Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74

(2d Cir. 2017).  The Second Circuit and courts applying New York law routinely enforce

arbitration agreements that are formed by means materially identical to HBO Max's.

"Under New York law, in order for a contract to be binding, there must be a 'meeting of

the minds' and 'a manifestation of mutual assent.'"  *Flores v. Chime Fin., Inc.*, No. 21-CV-4735

(RA), 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022) (quoting *Starke v. SquareTrade, Inc.*,

913 F.3d 279, 288 (2d Cir. 2019)); *see also Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d

Cir. 2009) ("A contract may be formed by words or by conduct that demonstrate the parties'

9

mutual assent.").[4]  "Web based agreements have 'not fundamentally changed the principles of contract.'"  *Flores*, 2022 WL 873252, at *4 (internal quotation marks omitted).  Thus, under Second Circuit precedent and state contract law, "an agreement to arbitrate exists where the notice of the arbitration provision was *reasonably conspicuous* and *manifestation of assent unambiguous* as a matter of law."  *Meyer*, 868 F.3d at 76 (emphasis added).

It is well-established that consumers manifest assent to arbitration when, presented with terms and conditions that include an arbitration agreement, they affirmatively click a box indicating that they agree to the terms.  *See id.* at 79–80.  "Courts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."  *Id.* at 75 (cleaned up).  Such "clickwrap . . . agreements," which require users to click an 'I agree' box after being presented with a list of terms and conditions of use," are "routinely uph[e]ld" by courts "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  *Id.*; *see Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (Caproni, J.) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts . . . .").

---

[4] Under New York's choice of law principles, New York courts apply New York law unless there is an actual conflict with other potentially relevant state laws.  *Flores*, 2022 WL 873252, at *4.  Here, Plaintiffs chose to file suit in New York and reside in California and North Carolina.  The Court should apply New York law, and in any event there is no conflict between New York, California, and North Carolina law on the "question of whether parties have assented to a contract."  *Id.*; *see Meyer*, 868 F.3d at 74 (explaining that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term" (internal quotation marks omitted)); *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2017 WL 11017585, at *2 (M.D.N.C. May 17, 2017) (explaining that North Carolina applies a meeting of the minds test for contract formation); *Bergenstock v. LegalZoom.com, Inc.*, No. 13 CVS 15686, 2015 WL 3866703, at *6 (N.C. Super. June 23, 2015) (enforcing arbitration agreement where plaintiff "plac[ed] a checkmark in an empty box to expressly indicate acceptance of the Terms").

It is hard to conceive of a more conspicuous presentation of the arbitration provision than what is presented in the HBO Max TOU. Indeed, these provisions are substantially identical to provisions previously considered and upheld by the Supreme Court. *See Concepcion*, 563 U.S. at 336–37, 344 (finding enforceable AT&T's arbitration provision that is substantively identical to Plaintiffs' agreement with HBO Max). When Plaintiffs checked a box stating "I agree to the HBO Max **Terms of Use** and **Privacy Policy**," they plainly manifested assent to the HBO Max TOU available at the hyperlink, including the Arbitration Agreement, and formed a valid and binding agreement to arbitrate with HBO. *See, e.g.*, *Meyer*, 868 F.3d at 75 ("Courts routinely uphold clickwrap agreements" where "the user has affirmatively assented to the terms of agreement by clicking 'I agree'.").

Extensive precedent in this district confirms that HBO Max's clickwrap process establishes conspicuous notice of the Arbitration Agreement and unambiguous manifestation of assent. *See, e.g.*, *Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21-CV-10377 (AT) (KHP), 2022 WL 987665, at *4, 7 (S.D.N.Y. Apr. 1, 2022) (enforcing arbitration agreement where plaintiff "assent[ed] to the [Terms and Conditions] by clicking the check box"); *Flores*, 2022 WL 873252, at *5–6 (enforcing arbitration agreement where plaintiff "would not have been able to create [an] account without affirmatively agreeing to the terms and conditions on the page with the clickwrap agreement"); *Peiran Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (enforcing arbitration agreement where plaintiff "clicked 'AGREE,' manifesting the plaintiff's assent to be bound by the Terms & Conditions, which contained the arbitration provision"); *Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 653, 656 (S.D.N.Y. 2020) (enforcing arbitration agreement where plaintiff "necessarily checked the box in the 'terms and conditions' section

adjacent to the statement '*I understand and agree to all terms and conditions listed'" (emphasis

removed)); *Henricks v. Flywheel Sports, Inc.*, No. 19-CV-895 (PGG), 2020 WL 1285453, at *1,

6 (S.D.N.Y. Mar. 18, 2020) (enforcing arbitration agreement where sign-up page "required

[users] to click a box stating, 'I agree with the Flywheel Sports Terms and Conditions of Service

and Privacy Policy'" (emphasis removed)); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831,

833 (S.D.N.Y. 2020) (enforcing arbitration agreement because sign-in screen advised users that

"[b]y clicking the Sign Up . . . button, you agree to our Terms of Service and Privacy Policy"

(emphasis removed)); *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL

774135, at *1, 3 (S.D.N.Y. Feb. 18, 2020) (enforcing arbitration agreement where plaintiff

"[d]uring the online registration process . . . affirmatively checked a box indicating that he

agreed to [the] 'Informed Consent'" containing the agreement to arbitrate); *Galvez v. JetSmarter,

Inc.*, No. 18-CV-10311 (VSB), 2019 WL 4805431, at *5–6 (S.D.N.Y. Sept. 30, 2019) (enforcing

arbitration agreement where plaintiff in order to sign up "'must have' clicked on the toggle

indicating his acceptance of the Membership Agreement"); *Porcelli v. JetSmarter, Inc.*, No. 19-

CV-2537 (PAE), 2019 WL 2371896, at *2, 4 (S.D.N.Y. June 5, 2019) (enforcing arbitration

agreement where profile creation required user to "swip[e] a button indicating his agreement to

the 'Terms of Use and Privacy Policy'"); *Ventoso v. Shihara*, No. 19-CV-3589 (PAE), 2019 WL

9045083, at *3 (S.D.N.Y. June 26, 2019) (enforcing arbitration agreement where, "when

[plaintiff] originally signed up for her user account, she checked a box to indicate that she

accepted the Terms of Service, including the mandatory arbitration clause"); *Pincaro*, 2017 WL

4046317, at *1, 8 (enforcing arbitration agreement when plaintiffs were notified "that, by

creating an account, they agreed to be bound by the company's Terms of Use"); *Bernardino*,

2017 WL 7309893, at *11 (enforcing arbitration agreement when plaintiff was notified that

"'[b]y making this purchase you are agreeing to our TOU'"); *Fteja v. Facebook, Inc.*, 841 F.

Supp. 2d 829, 835, 840–41 (S.D.N.Y. 2012) (enforcing forum selection clause when Facebook

user was informed, immediately below the Sign Up button, that "[b]y clicking Sign Up, you are

indicating that you have read and agree to the Terms of Service").

      The means by which Plaintiffs accepted the HBO Max TOU is just as unambiguous as

the one the Second Circuit approved in *Meyer*.  There, Uber's sign-in screen included a

"register" button, directly below which were the words, "[b]y creating an Uber account, you

agree to the TERMS OF SERVICE & PRIVACY POLICY."  868 F.3d at 76.  *Meyer* held that

the "'[b]y creating an Uber account, you agree'" language was "a clear prompt directing users to

read the Terms and Conditions and signaling that their acceptance of the benefit of registration

would be subject to contractual terms."  *Id.* at 79 (alteration in original).  And that prompt was

conspicuous, *Meyer* held, because "[t]he entire screen is visible at once, and the user does not

need to scroll beyond [the register button] to find notice of the Terms of Service," because the

acceptance prompt appeared in a font color that contrasted with the background color, and

because the phrase Terms of Service was also in a contrasting color, signaling that it was a

hyperlink.  *Id.* at 78.  Each of these things is true of the screen presented to Plaintiffs when they

assented to arbitration upon creating their HBO Max accounts, and as in *Meyer*, "the existence of

the terms was reasonably communicated to the user."  *Id.* at 76.[5]

---

[5] It does not matter whether Plaintiffs clicked on the hyperlink that contained the TOU and the Arbitration
Agreement.  As the Second Circuit explained in *Meyer*, "[a]s long as the hyperlinked text was itself reasonably
conspicuous[,] . . . a reasonably prudent smartphone user would have constructive notice of the terms."  868 F.3d
at 79.  The user is bound whether or not he or she "bother[s] reading the additional terms."  *Id.*; *see also Nicosia*,
834 F.3d at 232 ("As with paper contracts or shrinkwrap agreements, to be bound, an internet user need not actually
read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their
existence.").

The Second Circuit's binding precedent in *Meyer* and the multitude of Southern District decisions enforcing nearly identical web-based agreements compel arbitration here.

        **2.**        **Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement**

Plaintiffs' claims fall squarely within the scope of HBO Max's Arbitration Agreement. "To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Courts must resolve "any doubts concerning the scope of arbitration issues in favor of arbitrability," *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal quotation marks omitted), and consider New York's "strong public policy favoring arbitration," *Ragone v. Atl. Video at Manhattan Ctr.*, No. 07-CV-6084 (JGK), 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008).  Indeed, disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . ." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 589 (1960).

HBO Max's Arbitration Agreement requires the parties, with two exceptions not relevant here, to arbitrate individually "**all disputes and claims** between us," including "claims arising out of or relating to any aspect of the relationship between [the parties], whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory." Davis Decl., Ex. A § 25(a) (emphasis in original).  This arbitration clause is "broad" rather than "narrow" under Second Circuit precedent because it applies to "[a]ll claims, disputes, or controversies arising out of, or in relation to" an agreement.  *Holick*, 802 F.3d at 394; *see Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015) (clause is broad where it "require[es] arbitration of disputes 'arising out of or in connection with' underlying contracts");

14

*Zambrana*, 2016 WL 7046820, at *3 (arbitration clause is "broad" where it requires "arbitration of any and all disputes").

Because the arbitration clause is broad, the "Court must apply a strong presumption of arbitrability in determining [its] scope." *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03-CV-1162 (WHP), 2003 WL 22024070, at *4 (S.D.N.Y. Aug. 28, 2003); *see also Zambrana*, 2016 WL 7046820, at *3. Even absent this presumption, Plaintiffs' complaint obviously "aris[es] out of or relat[es] to . . . the relationship between" the parties (the language in the Arbitration Agreement), because it alleges that HBO violated statutory duties to Plaintiffs in connection with their use of the HBO Max streaming platform. Plaintiffs agreed to arbitrate these claims, and they should be held to that agreement.

## II.    The Court Should Compel Plaintiffs To Proceed on an Individual Basis

Plaintiffs should also be held to their agreement that the claims they now assert would be pursued exclusively on an individual basis. The Court should enforce the parties' agreement by dismissing the class claims with prejudice.

The FAA "requires courts rigorously to enforce arbitration agreements according to their terms." *Epic Sys. Corp.*, 138 S. Ct. at 1621 (internal quotation marks omitted). Class waivers in particular must be enforced because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344. "[W]ith class arbitration," the Supreme Court has held, "the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace." *Lamps Plus*, 139 S. Ct. at 1416 (internal quotation marks omitted). For that reason, the Supreme Court has held that the FAA contains a presumption in *favor* of individual arbitration, requiring courts compelling arbitration to dismiss class claims unless the arbitration

agreement unambiguously authorizes class arbitration.  *Id.* at 1419.  "Courts may not infer from

an ambiguous agreement that parties have consented to arbitrate on a classwide basis."  *Id.*

      Here, the Arbitration Agreement is far from ambiguous.  It states repeatedly, in bold text

and in one instance all caps, that that the parties agreed that (i) all claims would be brought "**ON**

**AN INDIVIDUAL BASIS,**" that (ii) "**class actions are not permitted,**" and that (iii) the parties

"**waiv[ed] the right . . . to participate in a class action.**"  Davis Decl. Ex. A ¶ 1 and §§ 25,

25(a), and 25(f).

      That unambiguous waiver must be enforced.  The Supreme Court, Second Circuit, and

courts in the Southern District have all repeatedly enforced class waivers in arbitration

agreements that are equivalent to HBO Max's; indeed, the Supreme Court enforced a

substantively identical class action wavier and arbitration clause in *Concepcion*.  563 U.S. at 336,

352 (enforcing class waiver providing that parties must bring suit in their "individual capacity,

and not as a plaintiff or class member in any purported class or representative proceeding"); *see*

*also Epic Sys. Corp.*, 138 S. Ct. at 1623; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228,

233–35 (2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295–99 (2d Cir. 2013);

*Guerriero v. Sony Elecs. Inc.*, No. 21-CV-1618 (VB), 2022 WL 736428, at *3–4 (S.D.N.Y. Mar.

11, 2022); *Horton v. Dow Jones & Co.*, No. 18-CV-4027 (LGS), 2019 WL 952314, at *2

(S.D.N.Y. Feb. 27, 2019); *Sacchi v. Verizon Online LLC*, No. 14-CV-423 (RA), 2015 WL

765940, at *10 (S.D.N.Y. Feb. 23, 2015); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d

469, 474–75 (S.D.N.Y. 2013).

      The Court should enforce the unambiguous class action waiver and dismiss Plaintiffs'

class claims with prejudice.

**III.    The Court Should Stay All Proceedings Pending Arbitration**

In addition to compelling arbitration of Plaintiffs' individual claims and dismissing their class claims, this Court should stay all further proceedings pending arbitration.  The FAA provides that a party to a written arbitration agreement may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4, and the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," *id.* § 3.

The Second Circuit has made clear that district courts must stay litigation under Section 3 if a party requests a stay after "all claims have been referred to arbitration."  *Katz v. Cellco P'ship*, 794 F.3d 341, 345, n.6 (2d Cir. 2015).  This rule is compelled by the "plain language" of Section 3 as well as the "FAA's statutory scheme and pro-arbitration policy . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 345–46; *see also Davarci v. Uber Techs., Inc.*, No. 20-CV-9224 (VEC), 2021 WL 3721374, at *15 n.23 (S.D.N.Y. Aug. 20, 2021) (Caproni, J.) (staying action pending conclusion of individual arbitration).

<strong>CONCLUSION</strong>

Defendants respectfully request that the Court order Plaintiffs to submit their individual claim to binding arbitration, dismiss the class claims, and stay the litigation pending the conclusion of the arbitration process.

Dated: April 29, 2022
      Washington, D.C.

By:    /s/ Kenneth L. Chernof
          Kenneth L. Chernof, admitted *pro hac vice*
          Elisabeth S. Theodore, admitted *pro hac vice*
          ARNOLD & PORTER KAYE SCHOLER LLP
          601 Massachusetts Avenue, NW
          Washington, D.C.  20001-3743
          Telephone:  (202) 942-5940
          Facsimile:  (202) 942-5999
          ken.chernof@arnoldporter.com
          elisabeth.theodore@arnoldporter.com

          David B. Schwartz
          ARNOLD & PORTER KAYE SCHOLER LLP
          250 W. 55th Street
          New York, New York 10019
          Telephone: (212) 836-7383
          Facsimile:  (212) 836-8689
          david.schwartz@arnoldporter.com

          *Attorneys for Defendant*