UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL MCDANIEL and CONSTANCE SIMON, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>  v.<br><br>HOME BOX OFFICE, INC.,<br><br>              Defendant. | Case No. 1:22-cv-01942-VEC |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ALL PROCEEDINGS**

Kenneth L. Chernof, admitted *pro hac vice*
Elisabeth S. Theodore, admitted *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5940
Facsimile: (202) 942-5999
ken.chernof@arnoldporter.com
elisabeth.theodore@arnoldporter.com

David B. Schwartz
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 836-7383
Facsimile: (212) 836-8689
david.schwartz@arnoldporter.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

I.     Plaintiffs Affirmatively Accepted HBO's Arbitration Agreement, Establishing an Enforceable Contract ..................................................................................................1

II.    Calling the HBO Max TOU a "Terms Later" Contract Does Not Render it Unenforceable ............................................................................................................3

       A.     The HBO Max TOU Is Not a "Terms Later" Contract ............................3

       B.     Even if the HBO Max TOU Were a "Terms Later" Contract, It Would Still Be Enforceable ................................................................................7

III.   Plaintiffs' Course of Conduct Also Manifested Assent ..........................................8

IV.   The HBO Max TOU Is Not Unconscionable .......................................................10

CONCLUSION ............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................................... 10

*Bassett v. Elec. Arts, Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ........................................................................ 3, 5, 8

*In re Facebook Biometric Info. Priv. Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........................................................................... 9

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................................. 3

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
  372 F.2d 753 (2d Cir. 1967) ............................................................................................ 3

*Marciano v. DCH Auto Grp.*,
  14 F.Supp.3d 322 (S.D.N.Y. 2014) ................................................................................. 3

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .......................................................................................... 2, 7

*Moore v. Microsoft Corp.*,
  293 A.D.2d 587 (2nd Dep't 2002) .................................................................................. 6

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ......................................................................................... 6

*Pincaro v. Glassdoor*,
  2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ................................................................. 9

*Ragone v. Atlantic Video at Manhattan Center*
  595 F.3d 115 (2d Cir. 2010) .......................................................................................... 10

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ................................................................................. *passim*

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) .................................................................... 9

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019) ........................................................................................ 6, 7

*UBS Sec. LLC v. Prowse*,
   2020 WL 433859 (S.D.N.Y. Jan. 27, 2020) ............................................................................2

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   464 F. Supp. 3d 634 (S.D.N.Y. 2020) ...............................................................................2, 6

**Other Authorities**

Restatement (Second) of Contracts § 69(1)(a) (1981) ......................................................................8

**INTRODUCTION**

Plaintiffs entered into an agreement to individually arbitrate disputes relating to HBO Max in the most unambiguous manner possible: they voluntarily checked a box stating "I agree" to the HBO Max Terms of Use ("TOU"), which contained an arbitration agreement. Plaintiffs concede this. And they do not dispute that the Second Circuit and courts in this district routinely hold that this precise type of process is sufficient to bind parties to such agreements.

Instead, Plaintiffs argue that the HBO Max TOU is a "terms later" contract because they learned of the terms when creating their HBO Max accounts, and not when they entered into separate subscription contracts with Amazon and AT&T. That misses the point. HBO is not seeking to apply its TOU to any agreement between Plaintiffs and Amazon or AT&T. It is seeking to enforce the agreement that Plaintiffs formed with ***HBO*** when creating their HBO Max accounts. It is undisputed that Plaintiffs received and agreed to all of the terms when they created those accounts—not "later." Even if the arbitration agreement were a "terms later" agreement, it is enforceable here because Plaintiffs affirmatively agreed to it when it was presented. They clicked to agree, created their accounts, used HBO Max and did nothing to repudiate the terms to which they had agreed. Defendant's motion should be granted.[1]

**ARGUMENT**

**I.   Plaintiffs Affirmatively Accepted HBO's Arbitration Agreement, Establishing an Enforceable Contract**

Plaintiffs' opposition brief is most notable for what it does not dispute, *i.e.*, that (1) when creating their HBO Max accounts, they checked a box stating "I agree to the HBO Max **Terms of Use** and **Privacy Policy**," Mot. 2–3; (2) the Terms of Use to which they agreed to contained

---

[1] Plaintiffs' agreement is with WarnerMedia Direct LLC ("WarnerMedia"), which operates HBO Max, but this brief uses "HBO" for simplicity since HBO is the Defendant and the agreement covers WarnerMedia's affiliates. Davis Decl. Ex. A at 2.

an arbitration agreement and class action waiver, *id.* at 4–5; and (3) they had an opportunity to review the HBO Max TOU before clicking "I Agree" and creating their HBO Max accounts, *id.* at 10–11.  And they do not dispute that comparable agreements (often described as "clickwrap") are "routinely" upheld "for the principal reason that ***the user has affirmatively assented to the terms of agreement by clicking 'I agree.'***" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (emphasis added); *see also Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (Caproni, J.); Mot. 11–13.

These uncontroverted facts suffice to establish an enforceable contract under New York law.  As Plaintiffs acknowledge, *see* Opp. 4, a valid contract requires "'an offer, acceptance, consideration, mutual assent and intent to be bound.'"  *UBS Sec. LLC v. Prowse*, 2020 WL 433859, at *3 (S.D.N.Y. Jan. 27, 2020) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).  Each element is satisfied here.

Plaintiffs were presented with ("offered") the Terms of Use through a conspicuous hyperlink when creating their HBO Max accounts.  Davis Decl. ¶¶ 15–17; *see Meyer*, 868 F.3d at 78 (finding similar presentation of terms to be conspicuous).  The TOU explained that HBO was offering Plaintiffs access to the HBO Max "Platform," "subject to these Terms."  Davis Decl. Ex. A at 2–3.  The TOU further explained that access to the HBO Max Platform and creation of an HBO Max account was subject to additional requirements, including the separate maintenance of an active HBO Max subscription.  *Id.* at 5, 7–8.  Plaintiffs accepted HBO's offer, after having been made fully aware of the terms, and provided an "unambiguous" manifestation of assent and intent to be bound by checking "I agree."  *See Meyer*, 868 F.3d at 75.

Plaintiffs' contract with HBO was also supported by sufficient consideration.  HBO offered Plaintiffs the ability to create an account in exchange for their agreement to terms.  *See,*

2

*e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–41 (S.D.N.Y. 2012) (enforcing clickwrap agreement to terms governing creation of Facebook account). Beyond that, the arbitration clause and class action waiver were mutual, *see* Davis Decl. Ex. A § 25, and when an "arbitration clause binds both parties … [it] is, on its face, sufficient consideration." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 105 (E.D.N.Y. 2015); *see Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("Hellenic's promise to arbitrate was sufficient consideration to support Dreyfus's promise to arbitrate."); *Marciano v. DCH Auto Grp.*, 14 F.Supp.3d 322, 337 (S.D.N.Y. 2014) ("[T]he Agreement by itself contains sufficient consideration because, as discussed, it mutually binds both parties to submit claims exclusively to arbitration.").

## II. Calling the HBO Max TOU a "Terms Later" Contract Does Not Render it Unenforceable

Because the undisputed facts show that Plaintiffs' agreement with HBO satisfies all the elements required to form a valid contract under New York law, including assent, this Court can and should compel arbitration and dismiss the class claims. Plaintiffs' sole response is that the HBO Max TOU is a "terms later" contract, and that such contracts are categorically invalid absent an opportunity to return the product or cancel the service. Both premises are wrong. The relevant contract is Plaintiffs' contract with HBO governing creation of an HBO Max account, not any separate contracts with Amazon or AT&T, and Plaintiffs were presented with HBO's terms at the time they created their HBO Max accounts, not later. And even if the contract were a "terms later" contract, it would still be enforceable because Plaintiffs expressly agreed to it.

### A. The HBO Max TOU Is Not a "Terms Later" Contract

Plaintiffs' "terms later" argument depends on a flawed assumption: that HBO's motion to compel arbitration seeks to enforce a contract between Plaintiffs and Amazon or AT&T, rather than between Plaintiffs and HBO. Plaintiffs claim that "Defendant presented terms only after

3

Plaintiffs purchased a subscription" from Amazon and AT&T, making the HBO TOU a "textbook terms-later contract." Opp. 6.  But Plaintiffs' agreements with and payments to Amazon and AT&T, their subscription providers, are distinct from their subsequent agreement with HBO.  HBO is not attempting to enforce any terms that were part of Plaintiffs' subscription agreements with their subscription providers, but rather the separate contract in which HBO and each Plaintiff agreed to "arbitrate all disputes and claims between us."  Davis Decl. Ex. A § 25.

The HBO Max TOU unambiguously provide that the HBO agreement is separate and distinct from Plaintiffs' agreements with third-party subscription providers like Amazon and AT&T:  "These Terms constitute [an] agreement between you and [HBO], *and not between you and any Subscription Provider(s)*."  *Id.* § 22 (emphasis added).  The HBO Max TOU acknowledges that Plaintiffs "must have an active account with [a] Subscription Provider," *id.* § 5, and explains that that separate relationship is governed by "the terms of use and user agreement of your Subscription Provider," and not the HBO Max TOU, *id.* § 22.  In fact, should Plaintiffs "enter into a new Subscription with a different Subscription Provider," "[their] HBO Max Account shall remain the same."  *Id.* § 5.

Indeed, Plaintiffs *concede* that HBO was not a party to their subscription agreements with Amazon and AT&T:  "The facts are uncontested [that] '[w]hen a consumer subscribed to HBO Max via a distributer ... [HBO] has no direct involvement in this step, as the subscription purchase process is handled solely by the third party distributor.'"  *See* Opp. 2.

The enforceability of HBO's contract with Plaintiffs does not depend on whether Plaintiffs knew of HBO's independent usage terms at the time they entered into separate contracts with other distribution entities.  Recognizing as much, courts in this Circuit have consistently enforced arbitration agreements in analogous situations.  In *Bassett v. Electronic*

4

*Arts*, plaintiff purchased EA video games through a retailer, and then created an EA Online account to play the games online, accepting the EA Online terms and conditions and arbitration agreement as part of the account creation process.  93 F. Supp. 3d at 99, 104–05.  The court rejected plaintiff's arguments that the arbitration clause had to be "incorporated into the point-of-purchase contract" for the video games themselves, and that EA could not apply any additional terms as a condition of letting him create an account to play online.  *Id.* at 104.  The court explained that "Plaintiff himself may have entered into two contracts:  the point of purchase contract with the retailer, and the agreement for online play with EA."  *Id.* at 105.  But the online play agreement was independent, and even "[a]ssuming [arguendo] that access to EA Online was not adequate consideration for Plaintiff's promise to submit to arbitration, EA's mutual obligation to submit to arbitration, and to be bound by arbitration, was sufficient consideration for Plaintiff's assent to do the same."  *Id.* at 104 (footnote omitted).  The terms the retailer provided at the point-of-sale was irrelevant because the plaintiff's claims concerned EA's provision of online access, and EA sought to enforce terms to which the plaintiff agreed in obtaining that access.  *Id.* at 104–05.

      Similarly, in *Henricks v. Flywheel Sports, Inc.*, plaintiff booked and paid for Flywheel cycling classes through ClassPass, a third-party subscription service, but was required to create a separate online account with Flywheel to attend the classes.  2020 WL 1285453, at *2 (S.D.N.Y. Mar. 18, 2020).  Even though plaintiff had already paid ClassPass by the time she learned of Flywheel's terms and conditions through account creation process, the court enforced Flywheel's arbitration agreement.  "[E]ven if users enrolled in Flywheel classes through ClassPass," the court held, "they still had to create a Flywheel account [so] [plaintiff's] status as a ClassPass user has no bearing on whether she accepted the arbitration agreement" with Flywheel.  *Id.* at *6; *see*

5

*also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1224, 1230 (9th Cir. 2013) (enforcing arbitration agreement presented "when consumer becomes a DirecTV customer," even though the customer did not enter an arbitration agreement when he earlier leased DirecTV equipment from a retailer at the "point of sale").

Plaintiffs do not and cannot cite any authorities supporting their argument that HBO's agreement is a "terms later" agreement, much less that it is unenforceable. Plaintiffs puzzlingly argue that, "[b]ecause Defendant presented terms only after Plaintiffs purchased a subscription, the TOU is a textbook terms-later contract" under *Moore v. Microsoft Corp.*, 293 A.D.2d 587 (2nd Dep't 2002). *See* Opp. 6. But *Moore* said nothing about so-called "terms later" contracts. It simply held that a clickwrap agreement was valid and binding because "the program's user was required to indicate assent … by clicking on the 'I agree' icon before proceeding with the download of the software." 293 A.D.2d at 587. Here too, Plaintiffs were required to click "I agree" before proceeding with account creation. *See also Valelly,* 464 F. Supp. 3d at 640 (Caproni, J.) ("clickwrap agreements [are] valid and binding contracts" under *Moore*).

Plaintiffs also rely on *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019), but that case did not involve a subsequent transaction or a third party at all. Rather, SquareTrade sold a product as a seller on Amazon, and was attempting to enforce terms and conditions that governed the Amazon sale, not any subsequent transaction like creating an account on SquareTrade's website. That is why it was relevant that SquareTrade failed to call the terms and conditions to the buyer's attention on the Amazon purchase page, which SquareTrade controlled, or in the purchase confirmation email. 913 F.3d at 292–94. *Starke*'s facts are far afield from those here, where HBO is not trying to enforce terms and conditions governing a sale on Amazon, and where Plaintiffs concede that they received notice of the HBO Max TOU when they were

6

creating their account on HBO's website and affirmatively clicked to agree to the terms.

The other authorities Plaintiffs cite for the proposition that notice of the TOU should have been provided "at the point of sale" are all inapposite for the same reason as *Starke*: they involve sales contracts where the defendant relied on the purchase and retention of the product as the means of assent. *See* Opp. 10–12 (citing various cases). HBO is not seeking to enforce a sales contract. Nor is it arguing that Plaintiffs manifested assent to the HBO Max TOU through their subscription purchases with third parties, or through any other action than their affirmative assent in checking the box indicating their agreement during HBO's account creation process.

### B. Even if the HBO Max TOU Were a "Terms Later" Contract, It Would Still Be Enforceable

Even if the HBO Max were considered to be a "terms later" contract, it is still enforceable. Plaintiffs' affirmative decision to click "I agree" after presentation of the terms constitutes "manifestation of assent" that is "unambiguous as a matter of law." *Meyer*, 868 F.3d at 76. The phrase "terms later" is not a magic word that trumps ordinary principles of contract formation: regardless of when the terms were received, Plaintiffs knowingly accepted and performed under them.

Plaintiffs contend that consumers cannot manifest assent to "terms later" contracts absent an opportunity to "reject [the terms] and obtain a refund of the consideration surrendered." Opp. 7 (citing *Register.com*, 356 F.3d at 429 n.39). All the cases Plaintiffs cite rely on failure to return a product and obtain a refund as evidence establishing assent *by conduct*, namely keeping the product. None apply to this situation, where Plaintiffs affirmatively clicked "I agree."

In any event, Plaintiffs did have an opportunity to "reject" the HBO terms: they could have decided not to click "I agree," and not to create their accounts. And they had the opportunity to obtain a "refund of the consideration surrendered": their consideration was the

7

mutual agreement to arbitrate, *supra* at 2–3, and if they had rejected HBO's terms they would not have been required to arbitrate anything. *See Bassett*, 93 F. Supp. 3d at 105 (When an "arbitration clause binds both parties … [it] is, on its face, sufficient consideration.").

Plaintiffs claim—with no legal or factual basis—that the inability to obtain a refund from a third party somehow invalidates their assent to HBO's TOU, which they say "prohibits all refunds" from third-party subscription providers. Opp. 9. In fact, that is the ***opposite*** of what the HBO Max TOU provides:

> If you obtained your Subscription through a Subscription Provider other than WM, you will need to cancel your Subscription directly with such Subscription Provider … **Each Subscription Provider reserves the right to offer refunds, discounts or other consideration in select circumstances at its sole discretion**.

Davis Decl. Ex. A § 6 (emphasis added). If Plaintiffs wanted a refund from Subscription Provider AT&T or Amazon, the HBO Max TOU made clear that their recourse was to take it up with the company they paid, under whatever terms they agreed to when paying that company.

### III.  Plaintiffs' Course of Conduct Also Manifested Assent

Separate and apart from their affirmative acceptance, Plaintiffs' continued use of HBO Max, along with their apparently continued payment of their subscription fees over months and years *after* they were provided notice of the HBO Max TOU—and in Plaintiff McDaniel's case, separate resubscription to HBO Max after Amazon stopped offering HBO Max subscriptions—constitute an unambiguous manifestation of continuous assent.

"[W]hen a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com*, 356 F.3d at 403 (*citing* Restatement (Second) of Contracts § 69(1)(a) (1981)). Thus, when a reasonably conspicuous notice indicates that use of the service is acceptance, an individual's "choice [i]s

8

either to accept the offer of contract, taking the [service] subject to the terms of the offer, or, if the terms were not acceptable, to decline to take the benefits." *Id*. The individual's continued use of the service constitutes acceptance.[2]

Here there is no dispute that Plaintiffs received notice of the HBO Max TOU at the time they created their accounts. Opp. 6; *see* Davis Decl. ¶ 7. The HBO Max TOU state that "[y]our use of the Platform confirms your unconditional agreement to be bound by these Terms. If you do not agree to be bound by these Terms, you may not access or otherwise use the Platform." Davis Decl. Ex. A at 2. After receiving this notice, Plaintiffs continued to pay for and use the HBO Max service for months and years. Reply Decl. of Taylor Davis (June 23, 2022) ¶¶ 2–5. Plaintiff Simon and Plaintiff McDaniel both used HBO Max as recently as June 2022. *Id.* ¶¶ 2, 5. It is thus irrelevant whether Plaintiffs could have obtained a refund of their *initial* monthly subscription fee, when they affirmatively chose to maintain their subscription, every month, after learning of the HBO Max TOU.

In addition, after Amazon Channels stopped offering HBO Max subscriptions, Plaintiff McDaniel resubscribed to HBO Max through HBO directly on September 19, 2021, nearly 10 months after first seeing and clicking to agree to the HBO Max TOU. *Id.* ¶¶ 4–5. And she has continued to pay monthly subscription fees directly to HBO every month since then. *Id.* ¶ 5.

In *Register.com*, the Second Circuit offered an analogy to an apple stand: someone who takes an apple without paying and then sees a "50 cents an apple" sign may not have agreed to pay for the first apple, but "cannot continue on a daily basis to take apples for free, knowing full

---

[2] *See Pincaro v. Glassdoor*, 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) ("Plaintiffs are deemed to have assented to these Terms of Use by their continued use of Glassdoor's website."); *Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) ("After each notice, Plaintiff continued to use his Verizon services, thereby accepting the revised terms, including the arbitration clause."); *In re Facebook Biometric Info. Priv. Litig..*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) ("[I]ndividualized notice in combination with a user's continued use is enough for notice and assent.").

9

well that [the seller] is offering them only in exchange for 50 cents in compensation." 356 F.3d at 401.  Rather, that person is "bound by the terms" the seller "offers." *Id.* at 402.  Likewise, Plaintiffs' repeated decisions to continue to use and pay for HBO Max after learning of the terms constitutes an unambiguous agreement to the HBO Max TOU.

### IV.     The HBO Max TOU Is Not Unconscionable

Finally, Plaintiffs argue that "[e]ven if Plaintiffs manifested assent, the TOU is an unconscionable contract because Defendant omitted material information at the point of purchase and declined to create a mechanism to reject those terms." Opp. 13.  This argument is entirely derivative of Plaintiffs' earlier arguments and fails for the same reasons.

To establish unconscionability, Plaintiffs must "show[] that [the] contract is both procedurally and substantively unconscionable." *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 121–22 (2d Cir. 2010).  Their argument as to procedural unconscionability fails both (i) because HBO "has no direct involvement in" and did not control the terms of Plaintiffs' contracts with Amazon or AT&T, *see* Davis Decl. ¶ 5, and (ii) because HBO did not "omit" any material information with respect to the terms it offered Plaintiffs as part of the account creation process, *supra* at 1–3.  Plaintiffs also reiterate their false claim that HBO "forbid them from receiving a refund," Opp. 19, when in fact the HBO Max TOU expressly allowed for refunds by Subscription Providers like Amazon and AT&T, *supra* at 7–8.  Plaintiffs do not even attempt to establish substantive unconscionability.  Nor could they, as the Supreme Court has repeatedly concluded that mutual arbitration provisions like HBO's are enforceable. *E.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336–37, 344 (2011).

## CONCLUSION

Defendants respectfully request that the Court order Plaintiffs to submit their individual claim to binding arbitration, dismiss the class claims, and stay the litigation pending arbitration.

10

Dated: June 24, 2022
Washington, D.C.

By: /s/ Kenneth L. Chernof
Kenneth L. Chernof, admitted *pro hac vice*
Elisabeth S. Theodore, admitted *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5940
Facsimile: (202) 942-5999
ken.chernof@arnoldporter.com
elisabeth.theodore@arnoldporter.com

David B. Schwartz
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 836-7383
Facsimile: (212) 836-8689
david.schwartz@arnoldporter.com

*Attorneys for Defendant*