```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
                                                            DOC #:_____
UNITED STATES DISTRICT COURT                                DATE FILED: 01/27/2023
SOUTHERN DISTRICT OF NEW YORK
```

-------------------------------------------------------------- X
ANGEL MCDANIEL and CONSTANCE            :
SIMON, individually and on behalf of all others :
similarly situated,                     :
                                        :
                                        :   22-CV-1942 (VEC)
                      Plaintiffs,       :
           -against-                    :   OPINION & ORDER
                                        :
HOME BOX OFFICE, INC.,                  :
                                        :
                      Defendant.        :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs sued Defendant Home Box Office, Inc. ("HBO") for allegedly violating the Video Privacy Protection Act ("VPAA"). Compl., Dkt. 1. HBO moved to compel arbitration, to dismiss Plaintiffs' class claims, and to stay the case pending arbitration. Def. Mot., Dkt. 17. Plaintiffs opposed the motion. Pl. Opp., Dkt. 26. Plaintiffs also moved for the appointment of interim class counsel, Pl. Mot., Dkt. 29, and HBO opposed the motion, Def. Opp., Dkt. 32. For the reasons discussed below, Defendant's motion to compel arbitration, to dismiss the class claims, and to stay the case pending arbitration is GRANTED, and Plaintiffs' motion to appoint interim class counsel is DENIED as moot.

## BACKGROUND[1]

Plaintiffs subscribed to the streaming service HBO Max through third parties; Ms. McDaniel subscribed to HBO Max through Amazon Prime Channels in November 2020, and

---

[1] Although not raised by the parties, recent case law seems to suggest that there is some disagreement among courts in this circuit concerning the appropriate standard to apply on a pre-discovery motion to compel arbitration. *Compare Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary judgment standard) *with Aleksanian v. Uber Techs. Inc.*, 524 F. Supp. 3d 251, 258 (S.D.N.Y. 2021) (applying a motion to dismiss standard). Because the parties do not dispute the material facts relevant to the motion to compel arbitration, Pl. Opp., Dkt. 26 at 2, the Court need not resolve this conflict for the purposes of this motion.

Ms. Simon subscribed to HBO Max through AT&T in May 2021.  *See* Davis Decl. ("First Davis Decl."), Dkt. 19 ¶¶ 4, 9–10; Reply Davis Decl. ("Second Davis Decl."), Dkt. 28 ¶¶ 2–3.  After Amazon Prime Channels ceased offering HBO Max subscriptions in September 2021, Ms. McDaniel purchased an HBO Max subscription directly from WarnerMedia, which distributes HBO Max.  First Davis Decl. ¶ 4; Second Davis Decl. ¶¶ 4–5.  Plaintiffs continued using their HBO Max account through at least June 2022.  Second Davis Decl. ¶¶ 2, 5.

When subscribing to HBO Max through a third party, users must pay the cost of the subscription to the third party and then register for an HBO Max account.  First Davis Decl. ¶¶ 12–15.  When registering for an HBO Max account, the subscriber is presented with a sign-up page that features a bolded, purple hyperlink to the HBO Max terms of use ("TOU").  *Id*. ¶¶ 15–16, 18.  Prior to June 2021, subscribers were required to check a box indicating that they agreed to the TOU and privacy policy before completing the registration process, *id.* ¶ 17; after June 2021, registrants were presented with a notice that by continuing with the registration process, they consented to the TOU and privacy policy, *id.* ¶ 18–19.

The first page of the TOU features bolded text that notifies subscribers that the terms contain an arbitration agreement.  Def. Mem., Dkt. 18 at 4; First Davis Decl. Ex. A. ("TOU") § 25.  The arbitration agreement broadly encompasses "all disputes and claims" arising between the parties, except certain intellectual property and personal injury claims, and waives both parties' rights to bring any disputes through a class action, whether in arbitration or in court.  Def. Mem. at 4–5; TOU § 25.  The TOU also state that any subscription fees paid directly to HBO will not be refunded and directs users who subscribed via third parties to seek any refund from those third parties.  TOU § 6.

**DISCUSSION**

I.     **Legal Standard**

Pursuant to Section 2 of the Federal Arbitration Act ("FAA"), "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[2] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Because of the "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In interpreting an arbitration agreement, "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (cleaned up).

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. This question is determined by state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)) (internal citation omitted). If an arbitration agreement exists, the court must also determine "whether the dispute falls within the scope of the arbitration agreement." *Meyer*, 868 F.3d at 74 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)). In light of the "liberal federal policy favoring arbitration agreements . . . arbitration agreements should be enforced according to their terms unless the FAA's mandate has been overridden by a contrary congressional command." *Sutherland v. Ernst & Young LLP*,

---

[2]     Plaintiffs do not contest that the Federal Arbitration Act ("FAA") applies to the parties' agreement to arbitrate, Pl. Opp. at 3 (citing cases discussing the FAA), and the contract does not appear to fall within any of the exemptions set forth in the FAA.

3

726 F.3d 290, 295 (2d Cir. 2013) (cleaned up).  Challenges to the arbitration clause based "on a ground that directly affects the entire agreement," however, must be decided by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

## II.     The Parties Entered into an Arbitration Agreement

Plaintiffs do not dispute that they agreed to the TOU or that the arbitration clause applies to their VPAA claims.[3]  Rather, Plaintiffs' opposition to HBO's motion to compel arbitration centers on the fact that they were required to pay a subscription fee to the third-party provider before they were presented with HBO's TOU.  Pl. Opp. at 1–2.  Plaintiffs' argument, in essence, is that they are not subject to the arbitration agreement because the entire contract is unenforceable.  *See id*. at 8 ("Because Plaintiffs never had an opportunity to reject the HBO Max TOU, they never assented to arbitration."); *id.* at 10 ("Plaintiffs also never manifested assent because they never possessed actual or inquiry notice that additional terms applied."); *id.* at 14 (arguing that the TOU are unconscionable because "Plaintiffs never received the TOU until after purchasing a subscription").

While the FAA generally "does not permit judicial review of such challenges," there is "a limited exception . . . when a party questions whether a contract was ever made." *Dixon v. Wells Fargo Bank, N.A.*, No. 21-CV-10, 2021 WL 4805429, at *3 (S.D.N.Y. Oct. 14, 2021) (cleaned up); *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1.  Plaintiffs' arguments concerning unconscionability implicate whether the contract is voidable, not whether there is a contract.  *See Dixon*, 2021 WL 4805429, at *4 (reserving plaintiff's arguments regarding unconscionability for the arbitrator).  Accordingly, the Court will address only Plaintiffs'

---

[3]     The Video Privacy Protection Act ("VPAA") does not contain a "contrary congressional command" overriding the federal policy in favor of arbitration.  *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) (cleaned up); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-4570, 2017 WL 7309893, at *1–2 (S.D.N.Y. Nov. 20, 2017) (enforcing arbitration agreement as to plaintiffs' VPAA claims).

arguments that they never assented to the TOU; it leaves to the arbitrator Plaintiffs' arguments regarding the unconscionability of the arbitration agreement.[4]

Despite Plaintiffs' assertions to the contrary, they were given an opportunity to review the terms when they registered for their HBO Max accounts. *See* Pl. Opp. at 2–3, 7; First Davis Decl. ¶¶ 15–16, 18. The fact that they may not have done so is irrelevant; the terms were conspicuously presented for their review. *See Meyer*, 868 F.3d at 79 (presentment of terms through a bold hyperlink on a sign-up page was sufficient to alert a reasonable user). A contracting party's consent is valid even "[w]here there is no evidence that the offeree had actual notice of the terms of the agreement . . . if a reasonably prudent user would be on inquiry notice of the terms." *Id.* at 74–75 (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012)).

This is true even when the subscriber must buy a subscription from a third party before being presented with the service's terms. *See, e.g.*, *Basset v. Elec. Arts., Inc.*, 93 F. Supp. 3d 95, 98–99, 102 (E.D.N.Y. 2015) (enforcing arbitration clause in terms presented to plaintiff during online registration after purchase from third party); *Henricks v. Flywheel Sports, Inc.*, No. 19-CV-895, 2020 WL 1285453, at *2 (S.D.N.Y. Mar. 18, 2020) (same). The mutuality of the parties' agreement to arbitrate on a bilateral basis is sufficient consideration; in exchange for Plaintiffs' waiver of their rights to pursue any disputes arising out of the TOU in court or through a class action, HBO also bound itself to resolve any disputes arising out of the TOU in the same

---

[4] Even if Plaintiffs' arguments regarding unconscionability could be reviewed at this time, the outcome of the Court's decision would remain the same for the reasons discussed in section II of this opinion. The fact that the arbitration agreement excepts "issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration" also does not alter the Court's analysis. TOU § 25 (c). In light of the arbitration agreement's broad delegation of "all issues" to the arbitrator, *id.*, this merely "comports with the general principle that . . . the question of arbitrability[] is an issue for judicial determination," *AT&T Mobility LLC v. Smith*, No. 11-CV-5157, 2011 WL 5924460, at *2–3 (E.D.P.A. Oct. 7, 2011) (analyzing identical language).

manner. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (collecting cases).

Plaintiffs attempt to distinguish these cases on the grounds that they were not given an opportunity to reject the terms by seeking a refund when they first subscribed to HBO Max.[5] *See* Pl. Opp. at 1. But Plaintiffs never attempted to cancel their subscriptions and obtain a refund after receiving notice of the terms; to the contrary, they continued to renew their HBO Max subscription, even after they were well aware of the arbitration agreement in the TOU. Second Davis Decl. ¶¶ 2–5. In fact, Ms. McDaniel purchased a new subscription after Amazon Prime Channels discontinued HBO Max; that purchase was through WarnerMedia, and she once again agreed to the TOU during the sign-up process. *See id.* Plaintiffs subscribed to HBO Max after having been provided ample opportunity to review the applicable terms. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401–02 (2d Cir. 2004) (repeated transactions after initial notice of the applicable terms constitutes acceptance of those terms). Accordingly, the Court finds that Plaintiffs assented to the terms of usage.

### III. Plaintiffs Cannot Proceed with the Class Claims

HBO also seeks to enforce the arbitration agreement's class waiver through dismissal of Plaintiffs' class claims. Def. Mem. at 1. Plaintiffs argue that the TOU — including the agreement to arbitrate any disputes on a bilateral basis — are unenforceable in their entirety because they never assented to them and they are unconscionable. *See* Pl. Opp. at 1, 4.

Although the class waiver appears within the arbitration agreement, "the two contract terms are conceptually distinct" because the class waiver "is a promise to forgo certain

---

[5]   Notably, the terms of usage do not preclude refunds for purchasers who, like Plaintiffs, obtained their subscriptions through third-party providers; rather, those purchasers are directed to the applicable third party for a refund. TOU § 6.

procedural mechanisms *in court*." *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 179 (2d Cir. 2015) (citations omitted). Accordingly, the Court evaluates Plaintiffs' arguments regarding the alleged unconscionability of Plaintiffs' right to pursue a class action on their merits. *See, e.g.*, *Guerriero v. Sony Elecs. Inc.*, No. 21-CV-2618, 2022 WL 736428, at *3 (S.D.N.Y. Mar. 11, 2022) (enforcing class waiver where there was "no evidence" that plaintiff did not assent to the defendant's terms of usage).

Plaintiffs' arguments regarding unconscionability, however, are entirely derivative of their arguments regarding their failure to assent, and they fail for the same reasons. *See* Pl. Opp. at 13–14. It is irrelevant that Plaintiffs were not presented with the class waiver at the time they purchased their subscriptions through a third party; Plaintiffs had an opportunity to reject the class waiver when presented with the TOU, and they certainly had an opportunity to review and reject the class waiver when renewing and purchasing subsequent subscriptions. *See* Second Davis Decl. ¶¶ 2–5; *Register.com, Inc.*, 356 F.3d at 401–02.

Because the class waiver is enforceable, HBO's motion to dismiss the class claims with prejudice is granted. *See, e.g.*, *Marcario v. Midland Credit Mgmt., Inc.*, No. 17-CV-414, 2017 WL 4792238, at *5 (E.D.N.Y. Oct. 23, 2017) (enforcing class waiver by dismissing class claims).

Furthermore, because Plaintiffs cannot maintain a class action, there is no class to represent. Accordingly, Plaintiffs' motion to appoint interim class counsel pursuant to Federal Rule of Civil Procedure 23(g) is denied as moot.

## CONCLUSION

For the reasons discussed above, Defendant's motion to compel arbitration, to dismiss the class claims, and to stay the case is GRANTED,[6] and Plaintiffs' motion to appoint class counsel is DENIED as moot.  The parties must submit a joint update on the status of arbitration every six months, on the fifteenth of that month, or if the fifteenth falls on a weekend or holiday, on the first business day thereafter.  The first update is due on **July 15, 2023**.

The Clerk of Court is respectfully directed to STAY the case and terminate the open motions at docket entries 17 and 29.

**SO ORDERED.**

Date:  January 27, 2023
       New York, New York

                                                    VALERIE CAPRONI
                                                    United States District Judge

---

[6]  *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").  *See* TOU § 6.